IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VIRGIL E. DAY, et al., | ) | Civ. No. 05-00649 SOM/BMK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER GRANTING SECOND MOTION |
| vs. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| HAUNANI APOLIONA, | ) | |
| individually and in her | ) | |
| official capacity as | ) | |
| Chairperson and Trustee of | ) | |
| the Office of Hawaiian | ) | |
| Affairs, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF HAWAII, | ) | |
| | ) | |
| Intervenor- | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING SECOND MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

Plaintiffs are individuals who describe themselves as having "not less than one-half part" Hawaiian blood.  They challenge the manner in which the Office of Hawaiian Affairs ("OHA"), the current trustee of a public land trust created by the act through which Hawaii became a state, P.L. 86-3 (March 18, 1959), reprinted in 73 Stat. 4, 5 ("Admission Act"), has been and is spending certain funds it controls.  Plaintiffs argue that OHA is violating federal law by spending the public trust money to better the conditions of all persons having any quantum of Hawaiian blood, instead of restricting such spending to benefit

only people who, like them, have "not less than one-half part" Hawaiian blood.

To the extent Count I of the First Amended Complaint seeks to hold the OHA trustees individually liable for damages under § 1983, the court grants the individual trustees summary judgment, as the trustees are exercising their reasonable fiduciary judgment in determining how to further the purposes of the trust.  To the extent Counts I, II, and IV of the First Amended Complaint seek injunctive relief or a declaration that, under the Admission Act, the OHA trustees must use public trust funds only for the betterment of the conditions of people who have "not less than one-half part" Hawaiian blood, the court rules that the Admission Act is not so restrictive.  The court need not decide whether state law requires the public trust to be spent in the manner Plaintiffs advocate, as this court has already dismissed all state claims.

II.     BACKGROUND.

The facts pertinent to this motion have been set forth in previous decisions.  See, e.g., Day v. Apoliona, 496 F.3d 1027 (9th Cir. 2007).  In brief, the public trust created by the Admission Act is to be used for one or more of five enumerated purposes:

> [1] for the support of the public schools and other public educational institutions,
> [2] for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian

> Homes Commission Act, 1920, as amended,
> [3] for the development of farm and home
> ownership on as widespread a basis as
> possible[,] [4] for the making of public
> improvements, and [5] for the provision of
> lands for public use.

P.L. 86-3, § 5(f), 73 Stat. at 6; <u>see also</u> <u>Day</u>, 496 F.3d at 1028;

<u>Price v. Akaka</u>, 3 F.3d 1220, 1222 (9th Cir. 1993).

There is no dispute that Hawaii has delegated its public trust duties arising under the Admission Act to OHA or that the restrictions on the uses of the public trust apply to OHA. See <u>Price</u>, 3 F.3d at 1222 (noting that the restrictions in the Admission Act "apply to the use or disposal of the income by OHA"). Under state law, "OHA is funded in part with twenty percent of all income derived from the § 5(f) public trust." <u>Id.</u>; <u>see also</u> Haw. Rev. Stat. § 10-13.5 (1990) ("Twenty per cent of all funds derived from the public land trust . . . shall be expended by [OHA] for the purposes of this chapter."). State law requires OHA to use trust funds "for the betterment of the conditions of native Hawaiians." Haw. Rev. Stat. § 10-3(1) ("A pro rata portion of all funds derived from the public land trust shall be funded in an amount to be determined by the legislature . . . , and shall be held and used solely as a public trust for the betterment of the conditions of native Hawaiians."). OHA also receives other funds that need not be used for any of the purposes enumerated in the Admission Act. See <u>Day</u>, 496 F.3d at 1030.

3

Plaintiffs Virgil E. Day, Mel Hoomanawanui, Josiah L. Hoohuli, Patrick L. Kahawaiolaa, and Samuel L. Kealoha, Jr., (collectively, "Plaintiffs") claim to be "native Hawaiians," as that term is defined in the Hawaiian Homes Commission Act ("HHCA")," 42 Stat. 108 (1921).  First Amended Complaint (March 10, 2006) ¶ 4.  The HHCA defines "native Hawaiians" as "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778."  42 Stat. 108; see also Rice v. Cayetano, 528 U.S. 495, 507 (2000) (noting that the HHCA "defined 'native Hawaiians' to include 'any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778'").  In this order, the court uses the term "native Hawaiian" as defined in the HHCA.

As native Hawaiian beneficiaries of the public trust, Plaintiffs claim that the OHA trustees have violated and continue to violate OHA's public trust duties by failing to use trust funds "for the betterment of the conditions of native Hawaiians" only, to the exclusion of other people.  Plaintiffs challenge OHA's use of trust funds for the benefit of "Hawaiians" without

4

regard to blood quantum.[1]  <u>See</u>, <u>e.g.</u>, First Amended Complaint ¶ 11.

The First Amended Complaint asserts that Defendants: (1) violated their rights under the Admission Act and the Equal Protection Clause of the Fourteenth Amendment, to the extent those rights are enforceable under 42 U.S.C. § 1983, by expending public trust funds "without regard to the blood quantum contained in the definition of native Hawaiians in HHCA" (Counts I and II); and (2) "breached their duty under the common law of the State of Hawaii and H.R.S. § 10-16(c) of fidelity owed to Plaintiffs as 'native Hawaiian' beneficiaries" (Count III).  Although the First Amended Complaint is not entirely clear about the relief it seeks, this court has ruled that, with respect to Counts I through III, Plaintiffs seek damages against the OHA trustees in their individual capacities, and declaratory and injunctive relief against the OHA trustees in their official capacities. <u>See</u> Order Dismissing Action (Aug. 10, 2006) at 4.

Count IV of the First Amended Complaint also seeks the following declaratory relief:

> To the extent that . . . judicial decisions
> and statutory and constitutional provisions
> do not clearly establish that all land,
> income and proceeds therefrom, received by

---

[1] In this order, the court uses the term "Hawaiian" as defined in Haw. Rev. Stat. § 10-2, which uses "Hawaiian" to mean "any descendent of the aboriginal peoples inhabiting the Hawaiian Islands which exercised sovereignty and subsisted in the Hawaiian Islands in 1778, and which peoples thereafter have continued to reside in Hawaii."

OHA defendants directly or indirectly from the § 5(f) trust must be expended by OHA Defendants for the betterment of the conditions of native Hawaiians, Plaintiffs are entitled to a declaratory judgment holding that all land, income and proceeds received by OHA Defendants directly or indirectly from the § 5(f) trust must be expended by OHA defendants for the betterment of the conditions of native Hawaiians as defined in the [HHCA].

First Amended Complaint ¶ 32.

Plaintiffs identify four specific instances in which they say OHA is using public trust funds for purposes not limited to the betterment of the conditions of native Hawaiians. Plaintiffs say that public trust funds are being used to support (1) proposed federal legislation commonly referred to as the "Akaka Bill," (2) the Native Hawaiian Legal Corporation; (3) the Nā Pua No`eau Education Program; and (4) Alu Like. None of the four matters expressly limits itself to bettering the conditions of only native Hawaiians.

On February 22, 2006, this court granted summary judgment in favor of two former OHA trustees, Clayton Hee and Charles Ota, ruling that the statute of limitations barred Plaintiffs' § 1983 claims against them. On March 10, 2006, Plaintiffs filed a First Amended Complaint, reasserting the same § 1983 claims against Hee and Ota. On June 14, 2006, Hee and Ota filed a second motion for summary judgment based on the statute of limitations. Plaintiffs did not oppose this motion, see

Statement of Non-Opposition to the Second Motion for Summary Judgment of Defendants Hee and Ota (July 21, 2006), and have since abandoned their claims against them. <u>See</u> Memorandum in Opposition to OHA Defendants' Second Motion for Summary Judgment (May 22, 2008) at 2 ("On appeal, Plaintiffs did not appeal this court's dismissal . . . of claims against Defendants HEE and ODA [sic]"). Accordingly, no claims remain against Hee or Ota.

On August 10, 2006, this court dismissed the § 1983 claims asserted in Counts I and II of the First Amended Complaint, ruling that, in light of <u>Gonzaga University v. Doe</u>, 536 U.S. 273 (2002), Plaintiffs may not enforce the Admission Act through § 1983. <u>See</u> Order Dismissing Action (Aug. 10, 2006). The court also dismissed the Equal Protection claims asserted in Counts I and II, ruling that Plaintiffs had not alleged that they had been treated differently than similarly situated people. <u>Id.</u> Finally, the court determined that Counts III and IV of the First Amended Complaint asserted state law claims and declined to exercise supplemental jurisdiction over those claims. <u>Id.</u> To the extent Plaintiffs were attempting to seek declaratory relief under § 1983, the court dismissed the federal claims asserted in Count IV based on <u>Gonzaga</u>. Plaintiffs appealed. <u>See</u> Notice of Appeal (Aug. 16, 2006).

On appeal, Plaintiffs did not challenge this court's dismissal of their Equal Protection claims or their state law

7

claims.  See Memorandum in Opposition to OHA Defendants' Second Motion for Summary Judgment (May 22, 2008) ("On appeal, Plaintiffs did not appeal this court's dismissal of their equal protection claim, of claims against Defendants HEE and ODA [sic] nor state law claims asserted in Count III.").  Plaintiffs did challenge this court's dismissal of the § 1983 claims asserted in Counts I and II and contended that Count IV sought a declaration pursuant to § 1983 that the current OHA trustees owe native Hawaiians a duty of loyalty under section 5(f) of the Admission Act.  See 2006 W.L. 4109553, Appellants' Opening Brief, No. 06-16625 (Dec. 18, 2006).

On December 19, 2007, the Ninth Circuit reversed this court's determination that Gonzaga foreclosed Plaintiffs' § 1983 claims.  The Ninth Circuit held that, as alleged beneficiaries of the public trust, the native Hawaiian Plaintiffs have "an individual right to have the trust terms complied with, and therefore can sue under § 1983 for violation of that right." Day, 496 F.3d at 1039.  The Ninth Circuit noted, "Violations of this right may include, at minimum, wrongs of the type of which Day complains: expenditure of funds for purposes not enumerated under § 5(f)."  Id.  The Ninth Circuit left it to this court "to interpret those § 5(f) purposes to determine in the first instance not only whether Day's allegations are true, but also whether the described expenditures in fact violate § 5(f)."  Id.

8

As Plaintiffs' state law claims had been dismissed and Plaintiffs had not appealed their dismissal, the Ninth Circuit made it clear that this court is to determine only whether OHA is violating federal law.  See id.  That is, this court must only determine whether OHA's actions comply with any of the five enumerated purposes of the public trust created by section 5(f) of the Admission Act, not whether state law requires OHA to use the public trust solely for the benefit of native Hawaiians.

III.      SUMMARY JUDGMENT STANDARD.

Effective December 1, 2007, Rule 56(c) of the Federal Rules of Civil Procedure has been amended.  Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007).  "The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules.  These changes are intended to be stylistic only."  Rule 56 Advisory Committee Notes, 2007 Amendments.  Because no substantive change in Rule 56(c) was intended, the court interprets the new rule by applying precedent related to the prior version of Rule 56(c).

9

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Only admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.      <u>ANALYSIS.</u>

        A.    <u>OHA Trustees Named As Defendants In their
              Individual Capacities Are Entitled To Summary
              Judgement on the Merits of the § 1983 Claims
              Asserted in Count I.</u>

        The state law claims having been dismissed, Count I of

the First Amended Complaint has been pared down.  Still in issue

are damage claims brought under 42 U.S.C. § 1983, which provides:

              Every person who, under color of any statute,
              ordinance, regulation, custom, or usage, of
              any State or Territory or the District of
              Columbia, subjects, or causes to be
              subjected, any citizen of the United States
              or other person within the jurisdiction
              thereof to the deprivation of any rights,
              privileges, or immunities secured by the
              Constitution and laws, shall be liable to the
              party injured in an action at law, suit in
              equity, or other proper proceeding for
              redress, except that in any action brought
              against a judicial officer for an act or
              omission taken in such officer's judicial
              capacity, injunctive relief shall not be
              granted unless a declaratory decree was
              violated or declaratory relief was
              unavailable.  For the purposes of this
              section, any Act of Congress applicable
              exclusively to the District of Columbia shall
              be considered to be a statute of the District
              of Columbia.

         Plaintiffs claim that the OHA trustees named as

Defendants in their individual capacities are individually liable

for their alleged misuse of public trust funds.  Count I asserts

that the OHA trustees violated the provisions of the trust

created by the Admission Act when they expended trust funds to

(1) support the Native Hawaiian Government Reorganization Act of

2007, a.k.a. "the Akaka Bill"; (2) support the Native Hawaiian

Legal Corporation; (3) support the Nā Pua Noʻeau Education

Program; and (4) support Alu Like.  The Ninth Circuit recognized

that Plaintiffs may assert claims under § 1983 for "expenditure

of funds for purposes not enumerated under § 5(f)" of the

Admission Act.  Day, 496 F.3d at 1039.

The First Amended Complaint actually attempts to allege

a violation of § 1983 based on an alleged violation of state law.

Plaintiffs argue that, under sections 10-3 and 10-13.5 of the

Hawaii Revised Statutes, the OHA trustees were required to use

the public trust only for the betterment of the conditions of

native Hawaiians.  However, Plaintiffs conceded at the hearing

that a violation of state law is not actionable under § 1983

unless, of course, the state law violation is also a violation of

a party's federal right.  See Moreland v. Las Vegas Metro. Police

Dept., 159 F.3d 365, 371 (9th Cir. 1998) ("state law violations

do not, on their own, give rise to liability under § 1983");

Campbell v. Burt, 141 F.3d 927, 930 (9th Cir. 1998) ("As a

general rule, a violation of state law does not lead to liability

under § 1983."); accord Tierney v. Vahle, 304 F.3d 734, 741 (7th

Cir. 2002) ("a violation of state law is not actionable under

section 1983"); Bagley v. Rogerson 5 F.3d 325, 328 (8th Cir.

1993) ("We have held several times that a violation of state law,

without more, does not state a claim under the federal

Constitution or 42 U.S.C. § 1983.").  Accordingly, for purposes of the § 1983 claim asserted in Count I, this court examines only whether the OHA trustees violated a federal right or statute, in this case, the Admission Act.  Whether the OHA trustees are violating state law by using public trust funds to support the Akaka Bill, the Native Hawaiian Legal Corporation, the Nā Pua No`eau Education Program, and Alu Like is not before this court.

No material factual dispute is before this court.  It is undisputed that OHA is using public trust funds to support the Akaka Bill, the Native Hawaiian Legal Corporation, the Nā Pua No`eau Education Program, and Alu Like, none of which reserves its benefits for only native Hawaiians.

The issue before this court is whether section 5(f) of the Admission Act permits the use of the public trust funds for purposes other than to benefit only native Hawaiians, e.g., to support the Akaka Bill, the Native Hawaiian Legal Corporation, the Nā Pua No`eau Education Program, and Alu Like.  Because these expenditures of trust funds are consistent with the Admission Act, Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims.

This court recognizes that, because there is no material factual dispute in this case, any examination of the merits of Plaintiffs' § 1983 claims mirrors the analysis applicable to the qualified immunity defense Defendants raise

with respect to the § 1983 claims.  That is, a review of the substantive merits of the § 1983 claims requires the same consideration as a review of at least the first prong of the qualified immunity defense.

"Qualified immunity . . . shields § 1983 defendants 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Price, 3 F.3d at 1225.  The qualified immunity doctrine protects government officials from their exercise of poor judgment and fails to protect only those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  The purpose of qualified immunity is to protect officials from undue interference with their duties and from potentially disabling threats of liability. Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1098 (9th Cir. 1994).  The Supreme Court has therefore stated that qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. Saucier v. Katz, 533 U.S. 194, 200 (2001).  The Supreme Court has cautioned that a ruling on a qualified immunity defense "should be made early in the

proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Id.

The qualified immunity analysis is a two-step process. First, a court examines whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional or statutory right. See Kwai Fun Wong v. United States, 373 F.3d 952, 961 (9th Cir. 2004). In this initial inquiry, this court is obligated to accept a plaintiff's facts as alleged, but the court need not accept a plaintiff's application of the law to the facts. See Martin v. City of Oceanside, 360 F.3d 1078, 1082 (9th Cir. 2004). It is this initial inquiry in a qualified immunity analysis that this court is equating in this case with a review of the substantive merits of Plaintiffs' § 1983 claims, that is, of what Plaintiffs have the burden of establishing in their own case-in-chief. If no constitutional or statutory right would have been violated by the alleged actions, the qualified immunity inquiry ends, and a defendant has qualified immunity. If a violation could indeed be made out when the facts are interpreted in the light most favorable to the injured party, the qualified immunity analysis continues.

The court turns now to examining the details of the merits/qualified immunity issues raised by the § 1983 claims. If the OHA trustees sued in their individual capacities succeed in

establishing that Plaintiffs cannot prevail with respect to the § 1983 claims, the OHA Trustees simultaneously and redundantly are entitled to qualified immunity with respect to those claims.

        1.   <u>Akaka Bill.</u>

      Plaintiffs assert that the OHA trustees have violated and are violating section 5(f) of the Admission Act by spending public trust funds to support the Akaka Bill.  Plaintiffs say that spending trust funds to support a bill that, if passed, will not be limited to benefitting native Hawaiians only, violates the requirement that trust funds be used for the betterment of the conditions of native Hawaiians.  This court disagrees.

      The OHA trustees are charged with administering the public trust.  Under the terms of the Admission Act, they are allowed to use trust funds for the betterment of the conditions of native Hawaiians.  Because the Admission Act is silent as to exactly how the funds must be used to better the conditions of native Hawaiians, the OHA trustees have broad discretion in making that determination.  Section 87 of the Restatement (Third) of Trusts (2007) notes that, "When a trustee has discretion with respect to the exercise of a power, its exercise is subject to supervision by a court only to prevent abuse of discretion."

      The Ninth Circuit has already recognized the possibility that the OHA trustees may exercise their discretion in using public trust funds in a manner that benefits native

Hawaiians, as well as others.  In fact, the Ninth Circuit has

already provided guidance regarding the merits of Plaintiffs'

claims:

> Although we do not address the merits of
> Day's claims, we note for the sake of example
> and clarity that the common law of trusts
> offers guidance on two of the issues that
> Day's claims present: (1) how a court should
> determine whether activities funded by the
> trust funds are "for the betterment" of
> Native Hawaiians, and (2) whether trust funds
> can be spent in a way that serves Native
> Hawaiians, but also, incidentally, benefits
> other individuals.  One treatise suggests: To
> the extent to which the trustee has
> discretion, the court will not control his
> exercise of it as long as he does not exceed
> the limits of the discretion conferred upon
> him. . . . Even where the trustee has
> discretion, however, the court will not
> permit him to abuse the discretion.  This
> ordinarily means that so long as he acts not
> only in good faith and from proper motives,
> but also within the bounds of a reasonable
> judgment, the court will not interfere; but
> the court will interfere when he acts outside
> the bounds of a reasonable judgment.

Day, 496 F.3d at 1034 n.10 (citing Austin W. Scott & William F.

Fratcher, 3 The Law of Trusts § 187 (4th ed. 2001)).

Plaintiffs conceded at the hearing on the present

motion that the OHA trustees had broad discretion in determining

what is for the betterment of the conditions of native Hawaiians,

but argued that the OHA trustees abused their discretion in

supporting the Akaka Bill.  This court disagrees.  The Akaka Bill

seeks to provide for a process through which the United States

will recognize a Hawaiian governing entity.  See Native Hawaiian

Government Reorganization Act of 2007, S. 310, 110th Cong. (2007).  The Akaka Bill provides that it does not affect the definition of "Native Hawaiian" under any other federal or state law.  See id. sec. 3, ¶10(B).

This court is guided by the comments to section 87 of the Restatement, which provides an example of a trustee's broad discretion in exercising the powers of a trusteeship.  It notes that, even when the trust has mandatory provisions, "the trustee often has some discretionary authority and responsibility in important matters of detail and implementation."  Restatement (Third) of Trusts § 87, cmt. a. (2007).  For example, a trust may require the sale of property.  If the trust fails to further describe the details of how the property is to be sold, a trustee may exercise "fiduciary judgment with respect to the timing . . . , price, and other terms of the sale."  Id.

Like a trustee's exercise of fiduciary judgment in the details of the sale of the property, the OHA trustees may exercise reasonable fiduciary judgment in expending trust funds in support of the Akaka Bill.  Even if the Akaka Bill is intended to benefit Hawaiians in general, the OHA trustees would not be unreasonable or arbitrary in viewing the Akaka Bill as also benefitting native Hawaiians.  Numerous legal challenges have been brought against Hawaiian-only and native Hawaiian-only programs.  These legal challenges often assert Equal Protection

18

violations.   Although most race-based preferences are subject to "strict scrutiny," preferences given to American Indian tribes are reviewed under the "rational basis" standard.  <u>See</u> <u>Morton v. Mancari</u>, 417 U.S. 535 (1974).  The passage of the Akaka Bill might ultimately affect whether programs benefitting only Hawaiians and native Hawaiians are reviewed under the "strict scrutiny" standard as involving racial preferences, or under a "rational basis" standard as involving a political preference. It cannot be said that the OHA trustees are abusing their discretion in supporting legislation that could affect challenges to programs favoring Hawaiians and native Hawaiians.  The OHA trustees are reasonably exercising their fiduciary judgment when they expend trust funds in support of the Akaka Bill.  That action is consistent with the public trust requirement that trust funds be used for the betterment of the conditions of native Hawaiians, even if the funds simultaneously better the conditions of Hawaiians.

Nothing in section 5(f) of the Admission Act prohibits the use of trust funds that, while bettering the condition of native Hawaiians, also benefits the conditions of others. Plaintiffs read section 5(f) in a cramped, exclusionary manner that, if accepted, could lead to ridiculous results.  Suppose, for instance, that the OHA trustees decided to better the conditions of native Hawaiians by giving each native Hawaiian

$5,000.  A particular native Hawaiian might donate his $5,000 to the American Cancer Society, while another might buy a piece of jewelry.  Would Plaintiffs sue OHA for failing to limit the use of the first person's $5,000 to the provision of goods to only native Hawaiians, while the second person's use was legal because it was used to buy something personal for that particular native Hawaiian?

Or suppose a particular disease disproportionately affected native Hawaiians.  And suppose further that OHA, in an attempt to address an epidemic affecting a large percentage or even a majority of native Hawaiians, initiated a study or contributed to a pre-existing research program concerning the disease.  Would Plaintiffs object because the expenditure would also benefit Hawaiians or, say, Samoans who also suffered from the disease?  Would OHA be barred under Plaintiffs' reasoning from supporting such research simply because its benefits would not flow exclusively to native Hawaiians?

As a final illustration, the court considers whether Plaintiffs would challenge a program in which OHA offered to pay all medical expenses relating to the birth of any native Hawaiian child.  These expenses would naturally include the cost of prenatal care for the birth mother.  But suppose the birth mother was Hawaiian, with a 25 percent blood quantum, while the birth father was native Hawaiian, with a 75 percent blood quantum.  The

child would be native Hawaiian, but treatment during the pregnancy would benefit not only the native Hawaiian child, but also the Hawaiian mother.  Would Plaintiffs object to the benefits flowing to the Hawaiian mother?

The court presents these scenarios only to highlight that the logical result of Plaintiffs' position could ultimately be detrimental to native Hawaiians.  The OHA trustees must be allowed to exercise reasonable judgment in determining how to satisfy section 5(f).  In including the purpose of bettering the conditions of native Hawaiians, section 5(f) simply does not, as Plaintiffs contend, hamstring the trustees by requiring that they absolutely avoid simultaneously benefitting others.

Plaintiffs themselves, while challenging simultaneous benefits, may not actually think all simultaneous benefits are improper.  At the hearing, Plaintiffs praised OHA's recent use of the public trust to support the Department of Hawaiian Home Lands' provision of housing to native Hawaiians.  However, the Department of Hawaiian Home Lands does not restrict who can live in a Hawaiian Home Lands house.  When the Department of Hawaiian Home Lands grants a house to an eligible native Hawaiian, the native Hawaiian might live in the house with a non-Hawaiian spouse and Hawaiian children.  If Plaintiffs accept this situation as consistent with section 5(f), the court wonders why

they challenge other expenditures that benefit not only native Hawaiians but Hawaiians as well.

Consistent with the Ninth Circuit's guidance in <u>Day</u>, 496 F.3d at 1034 n.10, the Restatement makes clear that courts "will not interfere with a trustee's exercise of a discretionary power . . . when that conduct is reasonable, not based on an improper interpretation of the terms of the trust, and not otherwise inconsistent with the trustee's fiduciary duties." Restatement (Third) of Trusts § 87, cmt. b. (2007).  Nothing in the record indicates that the OHA trustees are supporting the Akaka Bill in bad faith or based on an otherwise improper motive. The OHA trustees are entitled to summary judgment on the merits of Plaintiffs' § 1983 claim seeking individual liability for the trustees' support of the Akaka Bill.

At the hearing, Plaintiffs argued that the OHA trustees are breaching the public trust because the benefit to native Hawaiians is the same as the benefit to every other member of the public.  This court is unpersuaded.  The Akaka Bill does not benefit every member of the public equally.  The OHA trustees are exercising their reasonable fiduciary judgment and broad discretion in spending public trust money lobbying for a bill that lays the foundation for recognition of a Hawaiian/native Hawaiian government.

Although this court earlier in this order equated its analysis of the substantive merits of the § 1983 claims with the application of the first prong of the qualified immunity test, the court is struck by the similarity between the court's examination of the OHA trustees' reasonableness or good faith and the second prong of the qualified immunity test.  That second prong, which is not reached if no constitutional violation is made out by a plaintiff's allegations, inquires whether the right allegedly violated was clearly established.  That is, a defendant has qualified immunity if the law did not put him or her clearly on notice that the conduct in issue was unlawful.  Saucier, 533 U.S. at 201.  The conclusion here that the OHA trustees acted reasonably and within their discretion as trustees is akin to a conclusion that they violated no clearly established law.

Similarly, in Price, 3 F.3d 1220, a § 1983 claim asserted that the OHA trustees improperly used section 5(f) public trust funds to mail and distribute referendum ballots. The trustees had proposed a "Single Definition Referendum" concerning whether the definition of "native Hawaiian" should be amended to include all people of Hawaiian ancestry and not just those with 50% or more Hawaiian blood.  Id. at 1222.  The plaintiffs in Price alleged that this use of trust funds violated the terms of section 5(f) of the Admission Act because funds were used to benefit non-native Hawaiians.  Id. at 1223.  The Ninth

Circuit determined, in a pre-<u>Saucier</u> case, that the OHA trustees had qualified immunity from these claims, as "there is no clearly established law prohibiting the OHA trustees from expending § 5(f) funds in support of the Single Definition Referendum which questioned the 50% or more blood quantum requirement for native Hawaiian status." <u>Id.</u> at 1225. In so ruling, the Ninth Circuit stated that the "OHA trustees reasonably believed that a referendum to determine Hawaiian opinion on the proper definition of 'native Hawaiian' was for the 'betterment of the conditions of native Hawaiians' as presently defined." <u>Id.</u> at 1226. The OHA trustees' belief that support of the Akaka Bill benefits native Hawaiians is equally reasonable.

2.   <u>Native Hawaiian Legal Corporation.</u>

There is no dispute that the OHA trustees are using trust funds to support the Native Hawaiian Legal Corporation. Exhibit B to the Concise Statement in support of the Second Motion for Summary Judgment is a contract between OHA and the Native Hawaiian Legal Corporation.[2] Page two of the contract states that, consistent with Act 170, Regular Session Laws of

---

[2]Plaintiffs challenge the authenticity of OHA's contract with the Native Hawaiian Legal Corporation, claiming that it is not authenticated. However, this contract is properly authenticated by the Declaration of Ernest M. Kimoto, who states that he is the senior counsel to the Administrator at OHA and that Exhibit B is a true and accurate copy of the contract contained in OHA's records and files. Declaration of Ernest M. Kimoto (March 27, 2008) ¶¶ 1, 4.

Hawaii, 2007, the Native Hawaiian Legal Corporation is awarded $567,302.00 from general funds and $567,302.00 from the public trust fund for fiscal year 2007-2008.  For fiscal year 2008-2009, those amounts increase to $592,302.00, respectively.  Plaintiffs argue that this use of trust funds does not further any purpose set forth in the Admission Act.  The court disagrees.

According to page 3 of OHA's contract with the Native Hawaiian Legal Corporation, the Native Hawaiian Legal Corporation is to

> render legal services and provide legal representation to clients in substantive areas which shall include but shall not be limited to:
>
> (a) Assertion and defense of quiet title actions;
>
> (b) Protection, defense and assertion of ahupua`a and kuleana tenant rights, including rights of access and rights to water;
>
> (c) Land title assistance, including review of title and genealogy;
>
> (d) Preservation and perpetuation of traditional and customary practices;
>
> (e) Protection of culturally significant places, including burial sites and material culture; and
>
> (f) Preservation of Native Hawaiian Land Trust entitlements.

As noted above, the Admission Act requires trust lands and funds to be used for one or more of five enumerated purposes:

25

> [1] for the support of the public schools and
> other public educational institutions,
> [2] for the betterment of the conditions of
> native Hawaiians, as defined in the Hawaiian
> Homes Commission Act, 1920, as amended,
> [3] for the development of farm and home
> ownership on as widespread a basis as
> possible[,] [4] for the making of public
> improvements, and [5] for the provision of
> lands for public use.

P.L. 86-3, § 5(f), 73 Stat. at 6; see also Day, 496 F.3d at 1028;

Price, 3 F.3d at 1222.

OHA's contract with the Native Hawaiian Legal

Corporation and OHA's resulting expenditure of trust funds

supports more than one of the public trust's purposes.  The

provision of legal services arguably betters the conditions of

native Hawaiians because it helps to preserve and perpetuate

their traditional and customary practices, protect culturally

significant areas, and help them assert their legal rights

regarding land and water in court.  The Native Hawaiian Legal

Corporation contract also can be said to aid farm and home

ownership, as it specifically calls for the assertion and

protection of land and water rights.  Conceivably, the Native

Hawaiian Legal Corporation's services will make public

improvements in the course of asserting rights of access and

protecting culturally significant places.  Finally, the contract

can be said to help provide for lands for public use, as it calls

for the protection of culturally significant places and for the

preservation and perpetuation of traditional and customary practices.

Nothing in the record establishes that the OHA trustees failed to use reasonable judgment in interpreting the Admission Act as allowing OHA to support this program to benefit native Hawaiians, while simultaneously benefitting Hawaiians in general. As Plaintiffs do not establish that the OHA trustees abused their discretion in this regard, Plaintiffs cannot prevail on this point.  The OHA trustees are entitled to summary judgment on Plaintiffs' § 1983 claims challenging the Native Hawaiian Legal Corporation expenditure.

3.    Nā Pua No`eau Education Program.

There is no dispute that the OHA trustees are distributing trust funds to the University of Hawai`i at Hilo, for and on behalf of Nā Pua No`eau, the Center for Gifted and Talented Native Hawaiian Children.  OHA has entered into a contract with the University of Hawai`i at Hilo, agreeing to provide it with $490,433 in general funds and $490,433 in trust funds for fiscal year 2007-2008.  This contract is consistent with the funding provided by the Hawaii legislature in Act 170, section 6, Regular Session Laws of Hawaii, 2007.  According to page 2 of the contract, which is attached to Defendants' Concise Statement as Exhibit D, the University of Hawai`i at Hilo, through its Nā Pua No`eau program, is to "provide for educational

enrichment programs for native Hawaiian children in grades K through 12 throughout the State of Hawaii."[3]  The program is "to be designed to optimize learning for Hawaiian students" and is supposed "to develop a stronger interest in learning, connect learning and education to one's Hawaiian identity, and explore possible educational, career and academic goals."

The use of trust funds to support this educational program is consistent with the Admission Act, which allows the trust to be used for the support of public schools and other public educational institutions.  There is no dispute that the University of Hawai`i at Hilo is a public educational institution.  Although the trust money being given to it is intended to benefit only a small portion of students--those with Hawaiian ancestry, the trustees have not abused their reasonable discretion in determining that provision of trust funds to the university is consistent with the trust's purposes.  The OHA trustees exercising their fiduciary judgment may determine that public education is being furthered by supporting the Nā Pua No`eau program.

_____

[3]Plaintiffs question whether the Nā Pua No`eau contract has been properly authenticated.  Kimoto, a senior counsel to the Administrator at OHA, states in his declaration that a true and accurate copy of the contract contained in OHA's records and files is attached as Exhibit D.  Kimoto Decl. ¶¶ 1, 5.  The contract is properly authenticated.

28

The use of trust funds to support the Nā Pua No`eau program also arguably betters the conditions of native Hawaiians in ensuring that learning is connected to students' Hawaiian identity.  Native Hawaiians stand to benefit if Hawaiian identity in general is preserved and pride in Hawaiian identity fostered. The OHA trustees were authorized to exercise their fiduciary judgment in determining the details of how to better the conditions of native Hawaiians through the use of trust funds. Nothing in the record establishes that the OHA trustees failed to use reasonable judgment in interpreting the Admission Act as allowing OHA's support of this program, which, while benefitting native Hawaiians, also benefits Hawaiians in general.  The OHA trustees are entitled to summary judgment with respect to the § 1983 claims concerning this program.

4.  Alu Like.

Pursuant to a contract, the OHA trustees are disbursing public trust funds to Alu Like.  See Ex. E to Defendants' Concise Statement.[4]  On page 4 of that contract, OHA agrees to provide Alu Like with $830,000.  In Act 170, the Hawaii legislature explains that $415,000 will come from general funds and $415,000

---

[4]Plaintiffs challenge the authenticity of the Nā Pua No`eau contract.  Kimoto, a senior counsel to the Administrator at OHA, states in his declaration that a true and accurate copy of the contract contained in OHA's records and files is attached as Exhibit E.  Kimoto Decl. ¶¶ 1, 6.  The contract is properly authenticated.

from public trust funds.  See Session Laws of Haw., Act 170, section 5 (Reg. Sess. 2007).  Alu Like is a nonprofit organization that strives to help Hawaiians and native Hawaiians achieve social and economic self-sufficiency through the provision of early childhood education and child care, elderly services, employment preparation and training, library and genealogy services, specialized services for at-risk youth, and information and referral services.  See Proposal Application (attached as part of Ex. E).

In supporting Alu Like, the OHA trustees have exercised their reasonable discretion and fiduciary judgment.  Alu Like's programs better the conditions of native Hawaiians and support public education, the first and second purposes listed in section 5(f) of the Admission Act.  The OHA trustees did not abuse their considerable discretion in determining that one of the ways they were going to better the conditions of native Hawaiians was by providing support to a service organization with the mission of helping Hawaiians and native Hawaiians achieve social and economic self-sufficiency.  Because the OHA trustees acted consistently with their duties under the Admission Act, the OHA trustees are entitled to summary judgment with respect to Plaintiffs' § 1983 claims asserting that the trustees have improperly used public trust funds in support of Alu Like.

B.    OHA Trustees Are Entitled to Summary Judgment on Plaintiffs' Declaratory and Injunctive Relief Claims.

Courts recognize that state officials may be sued in their official capacities for prospective injunctive relief under § 1983:

In Will v. Michigan Department of State Police, 491 U.S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" under § 1983. . . .

Will recognized one vital exception to this general rule: When sued for prospective injunctive relief, a state official in his official capacity is considered a "person" for § 1983 purposes. Will, 491 U.S. at 71 n.10, 109 S. Ct. 2304 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))).  This exception recognizes the doctrine of Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), that a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity.

Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007), cert. denied, 128 S. Ct. 882 (2008).

Whether Plaintiffs seek declaratory and injunctive relief pursuant to § 1983 against the OHA trustees in their official capacities in Count I of the First Amended Complaint is

unclear.  However, Plaintiffs do clearly seek such relief from the OHA trustees in their official capacities in Count II, which seeks declaratory and injunctive relief with respect to OHA's support of the Akaka Bill.  To the extent declaratory and injunctive relief is sought under § 1983 in Count I and II, the OHA trustees sued in their official capacities are entitled to summary judgment.

In so ruling, this court is not relying on the OHA trustees' argument that Plaintiffs' claim with respect to the Akaka Bill is not ripe because that bill has not yet been finalized or enacted by Congress.  Plaintiffs are asserting that any expenditure of trust funds in support of legislation that does not clearly benefit only native Hawaiians is improper. Although the Akaka Bill might be amended to support only native Hawaiians' rights, that is not an amendment that the OHA trustees have sought.  This case instead involves whether the trustees are properly exercising their discretion in using trust assets to support iterations of the Akaka Bill that are being proposed.

As discussed above, the OHA trustees properly exercised their considerable discretion and fiduciary judgment in determining that public trust funds could be used to support the Akaka Bill, the Native Hawaiian Legal Corporation, the Nā Pua No`eau Education Program, and Alu Like.  Plaintiffs are therefore not entitled to either a declaration that the expending of the

public trust funds in that manner violates the Admission Act or
an injunction prohibiting such conduct.

In Count IV, Plaintiffs seek a declaration that clearly
established federal law requires public trust funds to be used
solely for the betterment of the conditions of native Hawaiians.
As discussed above, the Admission Act requires the public trust
to be used for one of five enumerated purposes.  Whether or not
state law requires the OHA trustees to use the trust solely for
the betterment of the conditions of native Hawaiians, federal law
is not so restricted.

> C.   The Court Declines to Strike Plaintiffs' Concise
>      Statement.

The OHA trustees ask the court to strike Plaintiffs'
Concise Statement.  The trustees claim that this document may
exceed the page and/or word limitation applicable to concise
statements and that it lacks the certificate of compliance
required by local court rule.  The court declines to strike
Plaintiffs' concise statement.  First, much of the length of
Plaintiffs' Concise Statement results from its quoting of
Defendants' Concise Statement.  Had Plaintiffs simply referred to
paragraph numbers from Defendants' Concise Statement along with
their explanation as to whether the facts asserted therein were
disputed or admitted, the concise statement would have been
significantly shorter and within the applicable limitations.
More importantly, however, because Defendants are being granted

33

summary judgment by this order, they are not prejudiced by Plaintiffs' Concise Statement.

D.    The Court Declines to Strike The State of Hawaii's Position Statement.

On May 22, 2008, the State of Hawaii submitted a statement regarding its position on the OHA trustee's second motion for summary judgment.  Plaintiffs ask the court to strike that position statement on the ground that the state is not a party to this case.  The court denies Plaintiffs' motion, as the Ninth Circuit has allowed the state to intervene in this matter. See Day v. Apoliona, 505 F.3d 963 (9th Cir. 2007).  This court does not read that allowance as limited to appellate proceedings. Even were the Ninth Circuit's ruling so limited, this court would itself permit the State to intervene here.

III.    CONCLUSION.

For the foregoing reasons, summary judgment is granted in favor of Defendants on the remaining claims asserted in the First Amended Complaint.  This order renders moot the State of Hawaii's separate Motion for Summary Judgment (June 4, 2008). This order also renders moot Wendell Marumoto's motion to intervene (June 16, 2008).  Because no other claims remain for adjudication, the Clerk of Court is directed to enter judgment in

favor of Defendants, to terminate all pending motions, and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 20, 2008.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Day, et al. v. Apoliona, et al., Civ. No. 05-00649 SOM/BMK; ORDER GRANTING SECOND MOTION FOR SUMMARY JUDGMENT